COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-236-CR 

      2-07-237-CR 

      2-07-238-CR

 

 

JESSE GENE ODOM                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








In two issues, Appellant
Jesse Gene Odom (AOdom@) asserts that the trial court erred in overruling Odom=s motion for instructed verdict because he asserts the evidence was
legally and factually insufficient to support the verdict.  

II.  History

A.  Factual Background

On July 12, 2006, Mansfield
Police Department set up surveillance at a home located at 2518 Edgefield Trail
in Mansfield, Texas, in response to an anonymous complaint about narcotic
sales.  The officers observed a 1999
Mercury Mountaineer SUV (ASUV@) backed up to the garage.  The
garage door was partially open and police observed Odom making approximately
ten trips to and from the SUV to the garage loading things, including a black
bag, into the back of the SUV.  

After the officers saw Odom
put the black bag in the SUV, they walked up to Odom, identified themselves,
and asked to search the house.  With Odom=s consent, the police searched the house.  During the search, the officers determined
that Odom had outstanding traffic warrants and arrested him.  During a search of his person, the officers
found less than a gram of methamphetamine and a glass pipe.  








Odom contends that after he
was arrested and searched, he retracted his consent to search the house, and
that, because the officers did not find anything in the house, they focused on
the SUV.  The State asserts that Odom
told the officers some contradictory things about the SUV, but that he
eventually stated that he owned the SUV and his friend had just signed the SUV=s title over to him.  The police
then called for a K-9 drug dog that proceeded to sniff the SUV and made a
positive alert for contraband.

Subsequently, the officers
obtained a search warrant for the SUV and proceeded to search the SUV.  No contraband was found in the black zipper
bag or in any other items that they saw Odom carrying to the SUV.  However, the officers noticed several plastic
baggies sticking out of a cardboard box in the back seat area of the SUV; the plastic
baggies were Athe kind
that are used to package drugs.@  The officers found an exhaust
fan motor inside the box, and, after a closer inspection of the fan motor, the
officers found some tablets of ecstacy,[2]
three vials of GHB,[3]
and a small amount of methamphetamine (in a baggie) inside the fan motor.  








Odom contends that the
officers testified that they never saw Odom carry the box containing the fan
motor and contraband to the SUV and that the officers discovered that Diana
Moore (AMoore@) was the
registered owner of the SUV.  He also
contends that Moore=s name was
on the SUV=s insurance
card as a permitted driver and that she lived at the house with Odom, but that
Moore was never questioned about the vehicle, the box, the fan motor, or the
contraband.  There were also no
fingerprints or DNA taken.  Additionally,
Odom argues he never said that the box was his, and the officers admitted that Aanybody@ could have
put the box with the contraband in the SUV. 
Lastly, Odom claims that the box was not Aright next to@ the black
bag.

B.  Procedural Background

Odom moved for an instructed
verdict of not guilty, which the trial court denied.  Odom was subsequently convicted of (1)
possession of a controlled substance of less than one gram (methamphetamine)
and sentenced to two years= imprisonment; (2) possession of a controlled substance of one to four
grams of MDMA and sentenced to eight years= imprisonment; and (3) possession of a controlled substance of four
grams or more, but less than 200 grams of GHB and sentenced to twelve years= imprisonment.  The trial court
ordered Odom=s sentences
to run concurrently. This appeal followed.

III.  Standards of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine whether the necessary inferences are reasonable based upon
the combined and cumulative force of all the evidence when viewed in the light
most favorable to the verdict.@  Hooper v. State, 214
S.W.3d 9, 16-17 (Tex. Crim. App. 2007). 
We must presume that the fact-finder resolved any conflicting inferences
in favor of the prosecution and defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  

IV.  Analysis













In situations where the
accused is not in exclusive possession of the location of contraband, the State
is required to adduce beyond a reasonable doubt independent facts and
circumstances that affirmatively link the accused and the contraband, that is,
that he had knowledge of the contraband and exercised control over it.  Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995); Naquin v. State, 607 S.W.2d 583, 586 (Tex. Crim.
App. 1980 [Panel Op.]); Hudson v. State, 128 S.W.3d 367, 374 (Tex. App.CTexarkana 2004, no pet.).  A
non-exclusive list of factors has been developed when reviewing whether such
affirmative links have been established. 
Those factors include whether: (1) the contraband was in plain view or
recovered from an enclosed place; (2) the accused was the owner of the premises
or had the right to possess the place where the contraband was found, or was
the owner or driver of the automobile in which the contraband was found; (3)
the accused was found with a large amount of cash; (4) the contraband was
conveniently accessible to the accused, or found on the same side of the
vehicle as the accused was sitting; (5) the contraband was found in close
proximity to the accused; (6) a strong residual odor of the contraband was
present; (7) the accused possessed other contraband when arrested; (8)
paraphernalia to use the contraband was in view, or found on the accused; (9)
the physical condition of the accused indicated recent consumption of the
contraband in question; (10) conduct by the accused indicated a consciousness
of guilt; (11) the accused attempted to flee; (12) the accused made furtive
gestures; (13) the accused had a special connection to the contraband; (14) the
occupants of the premises gave conflicting statements about relevant matters;
(15) the accused made incriminating statements connecting himself to the
contraband; (16) the quantity of the contraband; and (17) the accused was
observed in a suspicious area under suspicious circumstances.  Tucker v. State, 183 S.W.3d 501, 510
(Tex. App.CFort Worth
2005, no pet.); Jenkins v. State, 76 S.W.3d 709, 712-13 (Tex. App.CCorpus Christi 2002, pet. ref=d).  This determination is made
on a case by case basis.  Jenkins,
76 S.W.3d at 713.  Concerning
prosecutions for possession of controlled substances, it is not the number of
links found between the defendant and the drug that is dispositive, but rather
the logical force of all of the evidence. 
Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).  When deciding whether there is sufficient
evidence to link the defendant to the controlled substance contraband, the
trier of fact is the exclusive judge of the credibility of the witnesses and
the weight to be given to their testimony. 
Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App.
2005).  These links connecting the
accused to the controlled substance in a possession case do not need to be so
strong as to exclude every other reasonable hypothesis except guilt, and these
links ordinarily emerge from an orchestration of several factors and the
logical force that they have in combination. 
Rivera v. State, 59 S.W.3d 268, 274 (Tex. App.CTexarkana 2001, pet. ref=d).  

V.  Application








First, there is only slight
evidence that the vehicle was not in the exclusive possession of Odom.  A ADiana Moore@ was a
permitted driver on the insurance card found in the vehicle and was the person
from whom Odom claimed to have recently purchased the SUV.  No other evidence tied her to the SUV and
there was no evidence of her direct possession of the vehicle before, during,
or after the vehicle search. 
Nevertheless, we will assume for purposes of this opinion, there was not
exclusive possession by Odom.  

As pointed out by the State,
Odom made contradictory statements about the SUV:  he claimed to own the SUV, he had drugs in
his pocket, he was transferring items to the SUV from a garage through a partly
open garage door when observed by the police, the drugs found in his pocket
were contained in the same type of baggie that was found in the box in the SUV,
and the black bag that he was witnessed putting into the SUV contained $184 in
cash.  Odom additionally concedes that
his name was on the insurance card found in the vehicle and that methamphetamine
was found in his pocket (as was a glass pipe). 









The jury had to determine
whether Odom intentionally or knowingly possessed the drugs in question,
possession meaning actual care, custody, control, or management.  The evidence presented to the jury met
several of the affirmative link factors, including Odom's right to possession
and ownership of the SUV, the place where the contraband was found, and a glass
pipe and additional drugs on his person when arrested.  See Tucker, 183 S.W.3d at 510; Jenkins,
76 S.W.3d at 712-13.   From this
evidence, and the other evidence listed above, the jury could have reasonably
concluded that Odom intentionally or knowingly possessed the controlled
substances located in the SUV.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at
778; Hooper, 214 S.W.3d at 16-17. 
And we cannot say, reviewing this evidence in a neutral light, that the
jury's determination is clearly wrong and manifestly unjust, or that a
different result is clearly suggested by the evidence.  See Watson, 204 S.W.3d at 414-15,
417.  Therefore, we hold that the
evidence is both legally and factually sufficient to support the jury's
verdict, and we overrule Odom's two points.

VI.  Conclusion

Having overruled Odom=s two issues, the judgment of the trial court is affirmed.

 

BOB MCCOY

JUSTICE

 

PANEL B:   GARDNER, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  May 8, 2008











[1]See Tex. R. App. P. 47.4.





[2]Ecstasy is the street name for
methylenedioxy methamphetamine (AMDMA@).





[3]AGHB@ is gamma hydroxybutyric acid.